# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

ZUNDRIA D. CRAWFORD                                                                   PLAINTIFF

VS.                                                                    CIVIL ACTION NO. 2:06CV125

BAXTER HEALTHCARE CORP.                                                               DEFENDANT

## ORDER

This cause comes before the court on the motion of defendant Baxter Healthcare Corporation for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Zundria Crawford has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

Defendant Baxter is a medical products company which produces, among other things, intravenous products for use in hospitals. From November 24, 2003 until January 1, 2005, plaintiff, an African-American female, was employed as a "Quality Lab Associate" in the microbiology lab at defendant's Cleveland, Mississippi facility. Defendant contends that plaintiff demonstrated serious deficiencies in her work performance during the period in which she worked at the lab. Barbara Davis, the microbiology lab supervisor (and an African-American female), testified in her deposition that Crawford committed a large number of work errors which required that "exception reports" be filed and that she failed to timely perform her work at the lab.

In her 2004 mid-year review, Davis noted that Crawford had a difficult time completing exception reports and "out of limit" reports which are used to document instances in which

environmental conditions at the lab exceeded limits established by the Food and Drug Administration. In her 2004 mid-year and year-end performance reviews, Davis wrote that plaintiff's work behavior was inappropriate and that she showed defensiveness and a lack of maturity when confronted with deficiencies in her work performance. Davis testified in her deposition that Willie Mae Martin, an African-American female employee at the lab, complained to Davis that Crawford treated her disrespectfully and that, in a meeting to address this complaint, Crawford behaved in a rude and disrespectful manner.[1] In her deposition, Davis summarized plaintiff's attitude at work as follows:

> Zundria or Ms. Crawford, in the time that she worked for me, was very defensive about everything. It was as though someone was always out to get her when it came to training. . . . I have stayed with Zundria until seven and eight o'clock on a Friday evening to write exception documents. That was how much I wanted her to succeed. . . . And I was - whenever anyone approached her . . . she was always very defensive. It was always "they didn't train me properly." It is like someone was out to get her. And no one was out to get anyone.

In January, 2005, defendant transferred Crawford to work at the chemistry lab, and defendant asserts that it did so to provide her with a more structured work environment.

Georgia Smith, the chemistry lab supervisor (and a white female), testified that she received a number of complaints from plaintiff's co-workers about errors in her work performance and about her overly defensive attitude. Smith asserts that plaintiff committed serious errors on August 8, 2005 and August 12, 2005 while performing important tests relating to quality control. On August 15, 2005, Smith and two other supervisors drafted a memorandum describing plaintiff's work deficiencies, and they instituted a Performance Improvement Plan

---

[1]This statement is offered and admitted not for the truth of the matter asserted, but rather to demonstrate that management had received complaints from co-workers regarding plaintiff.

which required that plaintiff demonstrate improved performance in a number of specific areas. Defendant asserts that, on September 19, 2005, plaintiff committed another serious error in performing quality control tests which required that a hold be placed on the product batches pending an investigation of the error.

Defendant asserts that this final error was serious enough to be reported to senior management at the Cleveland facility, and that, following a review of the numerous deficiencies in plaintiff's performance, she was terminated in late September, 2005. Plaintiff was replaced by another African-American female. Feeling aggrieved, plaintiff filed a charge of discrimination and retaliation with the EEOC, which subsequently issued a right to sue letter without determining whether discrimination or retaliation had occurred.[2] On July 17, 2007, plaintiff filed the instant lawsuit, and defendant has presently moved for summary judgment, arguing that no genuine issue of fact exists regarding plaintiff's claims in this case.

Plaintiff asserts race discrimination and retaliation claims (as well as certain state law claims) in this case, but the court concludes that she has presented insufficient proof to establish triable fact issues as to any of her claims. Even assuming, *arguendo,* that plaintiff were able to present a *prima facie* case of discrimination or retaliation (and it seems clear that she is unable to do so),[3] then the burden would shift to the defendant to state a legitimate, nondiscriminatory and

---

[2]Plaintiff's retaliation claims relate to an August 16, 2005 phone call in which she complained to a supervisor that another supervisor was discriminating against her on the basis of her race.

[3]The court need not repeat the familiar standards for establishing a *prima facie* case of discrimination or retaliation under the *McDonnell Douglas* burden-shifting framework. The court concludes that plaintiff is unable to establish her *prima facie* case, given that the proof establishes that she was not qualified for the position and given that she was replaced by an African-American female. This issue is essentially irrelevant, however, given that the evidence

3

nonretaliatory justification for its actions.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory and nonretaliatory, then the inference of discrimination created by the plaintiff's *prima facie* case disappears and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *See, e.g. Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Plaintiff may establish triable fact issues in this regard by either demonstrating that the defendant's stated reason was pretextual or by demonstrating that discrimination or retaliation was one motivating factor among others for an adverse employment action. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

In this case, defendant has produced one of the most carefully and extensively documented records of inadequate work performance which this court has encountered. The facts and testimony cited above represent a mere fraction of the voluminous record of poor work performance in this case, from a variety of witnesses of varying genders and racial backgrounds. The descriptions of the deficiencies in plaintiff's work performance and of her difficulties in dealing with co-workers, by various witnesses, are highly consistent. Moreover, the fact that plaintiff was replaced by an African-American female serves to defeat her *prima facie* claim of discrimination, as well as her argument that defendant's assertions of poor work performance were merely a pretext for discrimination. Having carefully reviewed the record in this case, the court has no doubt that plaintiff was, in fact, terminated because of her poor work performance

---

so strongly suggests that defendant's stated reason for terminating plaintiff was the genuine reason for its doing so.

and because of her difficult attitude in dealing with co-workers and supervisors, rather than because of discrimination or retaliation.

In response to the voluminous evidence offered by defendant, plaintiff offers rather weak assertions that some of the reports might have been "fabricated," without addressing the actual truth of many of the allegations. The court views these allegations of fabrication as having been effectively rebutted in defendant's rebuttal brief, and the documents in question are supported by the consistent deposition testimony of a variety of witnesses. Plaintiff highlights specific incidents in which white employees at Baxter made mistakes but were not fired, but she is unable to point to a white employee who had a comparable record of repeatedly making mistakes and being cited for poor relations with co-workers. In sum, the court views this case as involving nothing more than an employee who was fired for poor work performance, and the variety of federal and state claims asserted by plaintiff in this case are without merit. Defendant's motion for summary judgment is therefore due to be granted.

In light of the foregoing, it is ordered that defendant's motion [52-1] for summary judgment is granted. The motion [72-1] of plaintiff's counsel to withdraw from this case is granted.

A separate judgment will be issued this date, pursuant to Fed. R. Civ. P. 58.

This the 2nd day of May, 2008.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**